IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| HORACE LORENZO BROWN, SR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:16cr225 |
| | ) | 1:17cv640 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

### **M E M O R A N D U M   O P I N I O N**

This matter is before the Court on *pro se* Petitioner Horace Lorenzo Brown, Sr.'s ("Petitioner" or "Brown") Section 2255 Motion to Vacate or Set Aside Criminal Judgment. [Dkt. 51.] Petitioner's Motion for Leave to Amend is also before the Court. [Dkt. 58.] For the reasons set forth below, the Court will grant Petitioner's motion for leave to amend, but deny his motion to vacate, set aside, or correct his sentence.

### I.  Background

On October 6, 2016, a grand jury indicted Petitioner on two counts: (1) conspiracy to distribute 28 grams or more of cocaine base, in violation of 21 U.S.C. §§ 846 and 841(a)(1) ("Count I"); and (2) distribution of 28 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) ("Count II"). Indictment [Dkt. 19] at 1, 5.  On November 15, 2016, Petitioner

1

pled guilty to Count I of the indictment.  Plea Agreement [Dkt. 31] at 3.  In exchange for Petitioner's guilty plea, Count II was later dismissed.  [Dkt. 30.]  On March 2, 2017, the Court sentenced Petitioner to 60 months' imprisonment, which fell below his advisory United States Sentencing Guidelines ("U.S.S.G.") range of 108 to 135 months.  [Dkt. 46]; *see also* Presentence Investigation Report ("PSR") [Dkt. 35].  Pursuant to the terms of his plea agreement, Petitioner did not file a direct appeal.

On June 2, 2017, Brown petitioned to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, asserting ineffective assistance of counsel.  [Dkt. 51.]  On June 20, 2017, the Government filed its opposition.  [Dkt. 54.]  On July 20, 2017, Petitioner filed a response.  [Dkt. 57.]  A day later-on July 21, 2017—Petitioner filed his Motion for Leave to Amend.  [Dkt. 58.]  Both motions are now ripe for disposition.

## II.  Analysis

A.  Petitioner's Section 2255 Motion

Under 28 U.S.C. § 2255, a prisoner in federal custody may collaterally attack his sentence on four grounds: (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in

2

excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. *See Hill v. United States*, 368 U.S. 424, 426–27 (1962). The petitioner bears the burden of proof, which must be established by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

A petitioner who asserts ineffective assistance of counsel must meet a specific two-pronged test in order for a § 2255 motion to succeed. This test requires a showing that: (1) the performance of counsel fell below an objective standard of reasonableness, based upon prevailing professional norms; and (2) as a result, there was prejudice to the defendant. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). To satisfy the performance prong, the petitioner must demonstrate that the errors were "so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. To satisfy the prejudice prong, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. When a petitioner alleges ineffective assistance related to the entry of a guilty plea, the district court applies a slightly modified prejudice standard, requiring the petitioner to demonstrate that "there is a reasonable probability that, but for counsel's

errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59 (1985). In the instant case, Petitioner fails to meet his burden of proof on either of his two ineffective assistance claims.

First, Brown argues that his attorney did not properly challenge his conspiracy conviction, which he now asserts violates the well-established rule that an informant cannot serve as a co-conspirator. Mem. in Supp. of Mot. [Dkt. 52] at 5-6. In support of this argument, Brown contends that his conviction was based upon his alleged agreement with a single confidential source for the Government, *id.;* that he never sold drugs to that source prior to February 2016, at which time the source was already serving as an informant for the Government, Repl. [Dkt. 57] at 4; and that the Government presented the Court with no evidence that he conspired with any other individuals to sell drugs, Mem. in Supp. of Mot. at 6. For that reason, Brown asks this Court to vacate his conspiracy conviction and hold him liable instead for distribution.

As a preliminary matter, Brown's factual arguments stand in stark contrast to his assurances to the Court on at least two prior occasions that certain facts regarding his offense conduct were true and accurate. *See* Statement of Facts ("SOF") [Dkt. 5] at 6 (bearing Brown's signature and attesting to the facts as true and accurate); *see also* [Dkt. 30] (wherein

4

Brown told the Court under oath that he had no additions or corrections to the SOF). For example, Brown agreed that he had conspired with other persons, "both known and unknown," to distribute cocaine base. SOF, ¶ 1. Those individuals included his suppliers, who he referenced several times during conversations with the confidential source. *See* Affidavit [Dkt. 2], ¶ 18. Brown also admitted that he served as the confidential source's sole supplier for at least ten months prior to that individual's decision to become an informant, providing the source with "at least 3 kilograms of cocaine." SOF, ¶¶ 2, 5. Finally, Brown agreed that he "suppl[ied the confidential source] with an additional amount of cocaine proportionate to what he was purchasing," creating a "fronting" situation in which the source always owed Brown money. *Id.,* ¶¶ 5-6. Having twice assured the Court that these facts are true, Brown cannot now claim that they are false—without any evidentiary support—and blame his attorney for the inconsistency.

      Presumably, Brown's argument is that, given his new view of the facts, his attorney was ineffective because she failed to argue that Brown conspired solely with a government agent during the entire life of the charged conspiracy. He does not argue that she failed to oppose certain inaccurate facts at the time of his plea agreement or sentencing. He also does not

contend that he would have proceeded to trial if she had given him different advice regarding his plea. Rather, Brown asserts only that he would have preferred to plead guilty to a different count of the criminal indictment. His lack of content with the bargain he ultimately struck—based upon facts he twice attested to as true and accurate—is insufficient to meet his burden of proof to justify relief under § 2255. Such an argument establishes neither deficient performance nor prejudice under *Strickland*. The Court will therefore deny his request to vacate his conspiracy conviction.

Second, Brown argues that his attorney was ineffective because she failed to object to a two-point weapons enhancement under U.S.S.G. § 2D1.1, which ultimately prevented Brown from being "safety valve" eligible at sentencing. Mem. in Supp. at 10-11. Brown contends that where his gun was found—35 miles away from where he was arrested—is sufficient to establish that it was not connected to the instant drug offense. *Id.* In addition, Brown argues that there were no drugs found "anywhere near the vicinity of his . . . firearm." *Id.* at 11. As a result, Brown contends that the enhancement should never have been applied. *Id.* Because it was, Brown asserts that he was

6

sentenced to a higher term of imprisonment than he otherwise would have been.[1]  *Id.*

Again, Brown appears to be upset with the terms of the deal that he accepted.  Contrary to the assertions in his § 2255 motion, Brown explicitly agreed to the two-point weapons enhancement under § 2D1.1 during plea negotiations.  *See* Plea Agreement [Dkt. 31] at 5.  He includes no argument or evidence whatsoever regarding the allegedly deficient advice he may have received from his attorney about agreeing to this enhancement.  Instead, Brown merely argues that it should not have been applied and substantially prejudiced him by increasing his sentence.  The Court disagrees with Brown on both accounts.

Section 2D1.1 of the Guidelines establishes the base offense level for narcotics offenses.  *See* U.S.S.G. § 2D1.1(a).  Subsection (b) then identifies several "Specific Offense Characteristics" that, when applicable, warrant an offense-level enhancement.  *See id.* § 2D1.1(b).  As relevant here, "[i]f a dangerous weapon (including a firearm) was possessed," the sentencing court is to "increase by 2 levels" the defendant's offense level.  *Id.* § 2D1.1(b)(1).  The Commentary makes clear that this "enhancement should be applied if the weapon was

---

[1] This statement is false, as Brown's sentence of 60 months is well below the advisory Guidelines range of 108-135 months.  [Dkt. 46]; *see also* PSR.

7

present, unless it is clearly improbable that the weapon was connected with the offense." *Id.*, application note 2.

In the Fourth Circuit, the government is required to prove by a preponderance of the evidence that "the weapon [was] possessed in connection with the drug activity . . . [as] part of the same course of conduct or common scheme as the offense of conviction." *United States v. McAllister*, 272 F.3d 228, 233-34 (4th Cir. 2001). Such evidence can include the type of firearm used, *United States v. Ward*, 171 F.3d 188, 195 (4th Cir. 1999) (noting that handguns are "indicia of drug dealing"), the location or proximity of the seized firearm to the drug offense, *United States v. Manigan*, 592 F.3d 621, 629 (4th Cir. 2010), and whether the firearm was "readily available to protect the participants themselves during the commission of the illegal activity or the drugs or cash involved in the drug business," *id.* at 629 (internal quotations omitted).

Here, Brown's black KelTec handgun was found in an unlocked plastic case inside a drawer of his bedside table at his home. It had a round in the chamber and a loaded magazine. Nearby, in a bedroom closet, Drug Enforcement Administration agents found drug distribution paraphernalia, including $8,402.87 in cash, a large tin can, four scales, a large container of Inositol, a ceramic dinner plate, a razor blade, and a paper ledger that appeared to track various narcotics

transactions. SOF, ¶ 16. Several of these items had cocaine residue on them, even though no cocaine was found in the bedroom. *Id.*

Although Brown is correct that his handgun was found at least 35 miles away from where he was arrested, this fact alone does not preclude the application of a two-level sentencing enhancement under § 2D1.1(b)(1). In fact, quite the opposite is true. The loaded handgun's close proximity to cash and other drug distribution paraphernalia was sufficient evidence for the Court to conclude that the enhancement applied. *See Ward*, 171 F.3d at 195; *Manigan*, 592 F.3d at 629. That remains the case today, even if Brown's attorney had objected.

As with his first ineffective assistance claim, Brown has failed to demonstrate either deficient performance or prejudice under *Strickland*. He has shown the Court no evidence that his counsel provided inadequate advice before he decided to accept the two-level weapons enhancement under § 2D1.1(b)(1) as part of his plea agreement. Furthermore, Brown was sentenced to far less time than his advisory Guidelines range recommended. As a result, even if the two-level enhancement had been applied in error, such an error did not, as Brown claims, result in any prejudice to him. The Court therefore finds that Brown has

failed to meet his burden of proof to justify relief under § 2255 based upon ineffective assistance of counsel.[2]

B. Motion for Leave to Amend

A prisoner may file a motion to amend an initial § 2255 motion if the district court has not yet adjudicated the § 2255 motion. *See Ching v. United States*, 298 F.3d 174, 176-78 (2d Cir. 2002); Charles A. Wright, Nancy J. King & Susan R. Klein, 3 Federal Practice and Procedure § 602 n. 9 (3d ed. 2004). Because this Court has not previously ruled on Brown's § 2255 motion, the Court will grant Brown leave to amend. Thus, Brown's amended claim is now before the Court.

In his amended motion, Brown argues that, although he received a two-level weapons enhancement under U.S.S.G. § 2D1.1(b)(1), he should have remained eligible for "safety valve" relief under § 5C1.2(a)(2). Mot. for Leave to Amend [Dkt. 58] at 1. To support this argument, Brown repeats his assertions that the gun was located 35 miles away from the instant drug offense and that the Government failed to present sufficient evidence to establish the gun's connection to the charged crime. *Id.* at 2.

---

[2] Brown raises a third argument in his reply brief, asserting that the Court lacked subject matter jurisdiction to impose a two-level weapons enhancement under § 2D1.1(b)(1). Repl. at 6-12. While creative, Brown's argument still fails. Federal courts have original jurisdiction over all violations of federal law. *See* 18 U.S.C. § 3231. Because Brown pled guilty to violating a federal law, 21 U.S.C. § 846, this Court had jurisdiction over Brown's criminal case, including the determination of an appropriate sentence.

To qualify for "safety valve" relief, the defendant must establish that he meets five criteria, including, as relevant here, that he did not "possess a firearm . . . in connection with the offense." U.S.S.G. § 5C1.2(a)(2). At the sentencing hearing, however, Brown conceded that his firearm was found in close proximity to drug distribution paraphernalia in his home. Even if Brown had not admitted to his possession of this weapon, the Government would nevertheless have met its burden of proof in establishing a connection between the gun and Brown's criminal conduct. As noted above, Brown's loaded KelTec handgun was found near $8,402.87 in cash, a large tin can, four scales, a large container of Inositol, a ceramic dinner plate, a razor blade, and a paper ledger that appeared to track various narcotics transactions. *See Ward*, 171 F.3d at 195 (noting that handguns are "indicia of drug dealing"); *Manigan*, 592 F.3d at 629 (holding that courts can consider whether the firearm is readily accessible to protect the drugs or cash involved in the drug business). Thus, as this Court previously determined, Brown is ineligible for "safety valve" relief under § 5C1.2(a)(2).

Even assuming that Brown's argument prevails, and it does not, it would have little practical effect on his sentence today. His adjusted total offense level would be 29, with an advisory Guidelines range of 87 to 108 months, which is still

well above the 60 months' imprisonment he is currently serving. The Court therefore finds him ineligible for relief under § 2255.

### III. Conclusion

For the foregoing reasons, the Court will grant Petitioner Horace Lorenzo Brown's motion for leave to amend. However, the Court will deny his motion to vacate, set aside, or correct his sentence under § 2255.

An appropriate order shall issue.

|  | /s/ |
|---|---|
| August 8, 2017 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |